UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17 CR 132 JAR  / DDN |
| ) | |
| WILLIAM CURRY and ) | |
| MATTHEW GIBSON, ) | |
| ) | |
| Defendants. ) | |

### ORDER AND RECOMMENDATION
### REGARDING MOTIONS TO SUPPRESS EVIDENCE

This action is before the court on the pretrial motions of the parties, which were referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b).  Before the court for consideration are the following motions:

a.   of defendant WILLIAM CURRY to suppress evidence (Docs. 71 oral, and 89), and to compel disclosure of FBI report (Doc. 109);

b.   of defendant MATTHEW GIBSON to suppress evidence (Doc. 68, oral) and for an extension of time to file pretrial motions (Doc. 88); and

c.   of the United States for a determination by the court of the admissibility or not of any arguably suppressible evidence (Doc. 78 oral) and to seal document (Doc. 94).

An evidentiary hearing was held on June 14, 2017.  From the evidence adduced during the hearing, and considering the memoranda of the parties, the undersigned makes the following findings of fact and conclusions of law:

### FACTS

1.   On November 26, 2016, a theft of many designer handbags occurred at the Saks Fifth Avenue retail store at Plaza Frontenac in Frontenac, a suburb of St. Louis, Missouri.  Frontenac police officers gathered the evidence from the store and evidence

regarding the pursuit of the thieves.  Federal Bureau of Investigation Special Agent Kevin Cosentino went to the Frontenac Police Department and reviewed the available evidence, which included a security video from the store.  The video depicted two vehicles and approximately 14 people who ran into the store, grabbed many purses, ran out of the store, and jumped into two waiting vehicles.  One vehicle was a red Dodge and the other was a silver Nissan Rogue.

2. Later on November 26, 2016, the red Dodge was stopped near Litchfield, Illinois.  From this vehicle 8 individuals were arrested and a number of the stolen purses were seized from the vehicle.  These persons were charged in this District Court with the federal crime of interstate transportation of stolen  property, in *United States v. Wingard*, et al., No. 4:16 CR 522 AGF.  Ultimately, in that case all 8 defendants pled guilty.

3. One of the *Wingard* defendants cooperated ("CI") with law enforcement's investigation of the persons who used the silver Nissan; CI became a government witness in an effort to receive leniency from the court at sentencing.[1]  CI told the FBI that all the thieves were from the Englewood District neighborhood in south Chicago.  CI knew all the others since the time they were all kids.  CI stated they had all driven down from Chicago in the two vehicles to steal the designer handbags.  CI is also a longtime residence of the Englewood neighborhood.

4. Agent Cosentino investigated the identities of the persons who were in the silver Nissan.  On January 26, 2017, Cosentino interviewed CI, in the presence of CI's defense counsel, to learn the identities of the others.  He showed CI two still pictures from the store surveillance video, Government Exhibits 3 and 4.  These pictures depicted several individuals, believed to be involved in the theft.  When viewing these two still photographs, CI identified 6 persons by names he knew, some by street name, and one person by his true name, Fontaine Plummer.

---

[1] During the hearing there was a suggestion that CI may have been offered witness protection in connection with the cooperation.  However, no substantial evidence of this fact was adduced during the hearing.

2

5. To get the true names of the other suspects, Agent Cosentino used the FBI database. He sent the information he had developed to the FBI Chicago Division. The Chicago Division used this information and came up with suspects' street names and provided Agent Cosentino with law enforcement still photos of five persons.[2]

6. On March 7, 2017, Agent Cosentino interviewed CI in the presence of CI's attorney. The agent had all five of the suspects' photos in his hand. He sat down with CI and one-by-one he laid them before CI. Each time he laid a photo down, Cosentino said to CI, "Who's that?" At least once CI responded, "You know who that is." Cosentino replied, "No. Tell me who that is." CI then stated the individual's street name; CI did not know their true names. Each time CI stated a street name, Cosentino wrote the street name on the photo and CI wrote his initials on the photo and dated it. In this fashion, CI identified Fontaine Plummer, Anthony Hayes, William Curry, known to CI as "Pills" (Gov. Ex. 1[3]), and Matthew Gibson, known to CI as "Mac" (Gov. Ex. 2[4]). The fifth image was known to CI as "Vono." However, CI stated that this person was not the Vono who was one of the thieves. CI then provided another street address and additional information about the thief also known as Vono. Within an hour the FBI learned who the fifth thief was.

---

[2] Agent Cosentino believes there were 6 people involved. The sixth remains unidentified and has not been apprehended.

[3] Exhibit 1 contains five photographs of the same individual on a single page. The top row contains two mugshot photographs: the first of the individual in a white shirt against a blue background, the second of the individual in a black shirt against a tan background. The bottom row contains three photographs depicting the individual's multiple tattoos: the first of the individual's face and shirtless upper chest, which has three tattoos; the second of the top of the individual's forearms; and the third of the underside of the individual's forearms.

[4] Exhibit 2 contains two large mugshots of a second individual on a single page. The individual is wearing a gray sweatshirt against an ivory background and the photo depicts his head and most of his torso. In the first image, the individual is directly facing the camera. The second image is of the individual's profile, facing right.

3

7.      The next day, CI was shown a photo of the second person known as "Vono" and identified him as one of the thieves, whose true name is Devonte Holliday.

8.      More specifically, CI also told the agent on March 7, 2017, that CI had grown up with Pills in the Chicago, Illinois, area, since they were kids; that "Pills" is a black male between 20 and 25; and that he lives at 56th and Lowe in the Chicago area. CI did not know Pills's true name.

9.      Also, CI told the agent that the individual he knew as "Mac," drove a white Bonneville and "hung out" at an apartment building on Emerald Street in Chicago. During the interview, an agent pulled up an image of this apartment building on Google Earth. This image showed a white Bonneville parked in front of the building. CI looked at the Google Earth picture and said, referring to the white Bonneville, "That's it right there."

10.     Agent Cosentino did not identify anyone in his presentation of photographs to CI. He was seeking identifying information from CI, who had lived in the same neighborhood as these individuals and was involved in the same crime for which these individuals were being sought.

11.     To Agent Cosentino, the actual physical characteristics of defendants Curry and Gibson match those of the individuals depicted in the still photographs.

## **DISCUSSION**

Defendant William Curry seeks suppression of CI's identification of him on the grounds that the procedure used was unduly suggestive and otherwise unreliable, so that there is a substantial likelihood of misidentification. (Doc. 89). Defendant's argument is based on the assertion that the police initially only showed CI one picture of the suspect he identified as Pills. (Ex. 3). Defendant Matthew Gibson also challenges the constitutionality of CI's identification of him. (Doc. 68).

In *Stovall v. Denno*, the Supreme Court recognized a defendant's due process right to exclude identification testimony resulting from unnecessarily suggestive procedures. 388 U.S. 293, 302 (1967). The Court explained in *Neil v. Biggers* that "[i]t is the

4

likelihood of misidentification which violates a defendant's right to due process," 409 U.S. 188, 198 (1972), so the focus of the inquiry is not on the suggestiveness of the identification procedure but on the reliability of the identification. *Id.* at 198-99. In this case, CI was asked to merely name individuals in a photograph, so law enforcement could further investigate them.

The identification procedure itself was not impermissibly suggestive. The investigating agent did not suggest any names or other identifying information for the individuals. He simply asked CI *who* these individuals were, not whether they had been present at the scene of a crime. Their presence was depicted in the surveillance video and the still photos.

CI's identifications of movants Curry and Gibson are constitutionally reliable, as CI knew the subjects, including defendants Curry and Gibson, CI admitted participating in the crime with them, and CI was certain in the identifications. CI also provided additional identifying details that were corroborated by further investigation. *See Biggers*, 409 U.S. at 199-200. The information matched profiles in the FBI database, produced additional photographs that CI confirmed were the fugitives in the silver Nissan.

## ORDER AND RECOMMENDATION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of the United States for a determination by the court of the admissibility of any arguably suppressible evidence (Doc. 78 oral) **is denied** as mooted by the proceedings described above.

**IT IS FURTHER ORDERED** that the motion of defendant William Curry for the disclosure of an investigative report mentioned during the suppression hearing (Doc. 109) **is denied** as mooted by the government's response that it will provide the report to defendant in redacted form. (Doc. 110).

**IT IS FURTHER ORDERED** that the motion of defendant Matthew Gibson (Doc. 88) for an extension of time to file additional motions **is denied** as mooted by defendant Gibson's participation in the suppression hearing.

**IT IS FURTHER ORDERED** that the motion of the United States for leave to file a document under seal (Doc. 94) **is sustained** for the reasons set forth in the motion.

**IT IS HEREBY RECOMMENDED** that the motions of defendants William Curry and Matthew Gibson to suppress the identification evidence (Docs. 68, 71, 89) **be denied.**

The parties have 14 days to file written objections to this Order and Recommendation.  The failure to file timely written objections may waive the right to appeal issues of fact.

     /S/   David D. Noce     
**UNITED STATES MAGISTRATE JUDGE**

Signed and filed on July 7, 2017.